IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIM. ACT. NO. 1:22-cr-9-TFM |
| | ) | |
| **JARIUS RASHAD AMEY** | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's *Motion to Suppress Illegally Seized Evidence* (Doc. 24, filed 2/18/22). The Government timely filed the *United States' Response in Opposition to Motion to Suppress* (Doc. 30, filed 3/11/12). After a careful review of the motion, response, and the applicable law, for the reasons stated below, the motion to suppress (Doc. 24) is **DENIED**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Procedural History**

On January 26, 2021, the Grand Jury for the Southern District of Alabama indicted the defendant, Jarius Rashad Amey ("Amey" or "Defendant"). Count 1 of the Indictment alleges Amey unlawfully possessed a firearm because of his prior felony convictions in violation of 18 U.S.C. § 922(g)(1) and Count 2 alleges the firearm possessed by Amey in Count 1 had an obliterated serial number in violation of 18 U.S.C. § 922(k). *See* Doc. 1.

On February 18, 2022, Defendant filed the instant motion to suppress. *See* Doc. 24. The perfunctory motion provides that the crux of the Defendant's argument is the police lacked probable cause for the traffic stop; the traffic stop was unreasonably lengthened beyond the scope of the original traffic stop; and the ensuing search lacked probable cause – all in violation of the Fourth Amendment.

On March 11, 2022, the United States filed its response to the motion. *See* Doc. 30. In the

response, the United States asserts the initial consensual encounter resulted in the development of probable cause for the search of the vehicle and then even if the initial encounter constituted an investigatory stop, the police had reasonable suspicion to initiate it and that it was not unreasonably prolonged.

**B.    Factual Background Relating to Motion to Suppress**

The facts leading to the search at bar are simple, straightforward, and essentially not in dispute as the encounter was recorded by law enforcement – both the original 911 call and the actual encounter with the Defendant.  A copy of the bodycam and dashcam videos were attached as an exhibit to United States' response.  Additionally, the United States provided a copy of the audio from the 911 call.  *See* Doc. 30-1, Exhibits 1 and 2.

On Saturday, November 28, 2020, at approximately 3:45 a.m. Sergeant Daniel Hudson ("Hudson") and Officer Erik Morris ("Morris") of the Foley Police Department went to meet an off-duty police officer who earlier told the 911 dispatcher that he saw a speeding car he believed was driven by someone under the influence.  Hudson met the off-duty officer in the parking lot of the Bay Villa Apartments in Foley, Alabama.  The off-duty officer pointed out the suspicious car (a 2021 Silver Infinity JX35 with Alabama tags) and told Hudson the driver of the suspicious car was still inside the car.

Hudson drove up to the car and saw the head lights were off but the brake lights were on. Hudson walked toward the driver's door which opened when he got to the door.  When the door opened, Hudson identified himself and told Amey, the sole occupant of the car, why he was there. Amey had a backpack in his hand.  As he stood at the door, Hudson saw, what he recognized by training and experience, pieces of marijuana in the floor pan of the driver's seat.  Possession of marijuana is against the law in Alabama thus Hudson detained Amey in handcuffs.

The ensuing search of the backpack revealed a plastic baggie of marijuana inside a glass jar with a metal lid and a pistol whose serial number was obliterated.

The officers placed Amey under arrest and issued the *Miranda* warnings which he chose to waive. Amey told the police he was returning home from a club in Mobile, Alabama. He also stated the firearm belonged to his cousin who asked Amey to keep it for him. Amey said he was on probation for robbery and assault and admitted he smokes marijuana and had been drinking alcohol.

## II. DISCUSSION AND ANALYSIS

The Court has discretion to determine whether a hearing is needed on a motion to suppress. *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). A hearing is not required on a motion to suppress if the defendant does not allege facts that, if proven, would require the grant of relief. *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000); *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984). In the case at hand, there are no allegations of falsity by the officers in the motion to suppress and the facts are essentially undisputed based on the video and audio. Therefore, the Court finds that no hearing is needed.

### A.   Standing

It is well established that for a defendant to move to suppress evidence, he must have standing. *United States v. Eyster*, 948 F.2d 1196, 1208-09 (11th Cir. 1991). A defendant has the burden of showing standing under the Fourth Amendment. *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997). To claim the protection of the Fourth Amendment, an individual must have a "reasonable expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). A defendant's expectation of privacy must be "personal[]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference

to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (internal quotation marks omitted).  That said, "[s]tanding does not require an ownership interest in the invaded area." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (noting that the Supreme Court has recognized that an overnight guest in a home has a legitimate expectation of privacy in that home).

An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (citing *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006).  Courts assess on a case-by-case basis the standing of a particular person to challenge an intrusion by government officials into an area over which that person lacked primary control.  *Oliver v. United States*, 466 U.S. 170, 191 n. 13, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984).  Moreover, the Eleventh Circuit has held that where a defendant is neither the owner nor the lessee of the place searched, in order to contest a search, he must "demonstrate a significant and current interest in the property at the time it was searched." *United States v. Miller*, 387 F. App'x 949, 951 (11th Cir. 2010) (citation and quotation omitted).[1]

No one contests Amey has standing and the Court determines that Amey clearly has standing to contest the search.

**B.     Lawfulness of the stop**

The Court turns to the crux of Defendant's arguments – that the stop was unlawful because

---

[1] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

it lacked reasonable suspicion and/or probable cause.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies.  *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967)).  A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975).  However, not all interactions between law enforcement and citizens qualify as a "seizure[] of persons" triggering Fourth Amendment protections.  *Terry v. Ohio*, 392 U.S. 1, n. 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

> The Supreme Court has identified at least three separate categories of police-citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, *Florida v. Bostick*, 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975).

*United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003); *see also United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)) ("There are three broad categories of police-citizen encounters for purposes of our Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests.")

Turning to the situation at hand, all three categories of encounters are potentially implicated.  The Court preliminarily notes that law enforcement did nothing to make Amey stop

the vehicle. Indeed, Amey stopped because he had arrived in the parking lot of his apartment. Amey had no idea police were nearby before he stopped his car. In short, he had already stopped and merely opened the door when Hudson approached.

> The Supreme Court has held:
>
> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage- provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.

*United States v. Drayton*, 536 U.S. 194, 200-01, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002) (emphasis added and internal citations omitted). "The mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (citing *Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)). Finally, brief, consensual and non-coercive interactions between police and citizens do not require any particular level of suspicion on the part of the officer and does not constitute a seizure under the Fourth Amendment. *United States v. Griffin*, 696 F.3d 1354, 1360 (11th Cir. 2012) (quoting *Muehler v. Mena*, 544 U.S. 93, 101, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005)).

In the case at hand, the extremely brief act of Hudson approaching and identifying himself does not constitute a seizure and instead easily falls into a consensual encounter. "A police officer does not seize an individual merely by approaching the person in a parked car." *United States v. Colvin*, 822 F. App'x 956, 959 (11th Cir. 2020) (citing *Miller v. Harget*, 458 F.3d 1251, 1257-58 (11th Cir. 2006) and *Baker*, 290 F.3d at 1279). The fact that encounter escalated quickly to the second and third stages of police encounters was merely because the marijuana was so visible and

identifiable in the front seat. As such, based on the original encounter, the Court finds that the Fourth Amendment was not triggered by the initial approach and that probable cause was readily established when Hudson recognized marijuana in the car.

However, even if the initial encounter were to constitute police action at the second level, the search passes Constitutional muster as the initial stop of the defendant does not contravene the Constitutional prohibition against unreasonable searches and seizure.

A traffic stop[2] is a constitutional detention when it is justified by reasonable suspicion under *Terry*, 392 U.S. 1, 88 S. Ct. 1868, or probable cause to believe a traffic violation has occurred under *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). *See United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003); *United States v. Purcell*, 236 F.3d 1274, 1277 n. 5 (11th Cir. 2001). To determine whether probable cause or reasonable suspicion has been met, the court must determine whether the officer's actions were reasonable. *See Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62, 134 L. Ed. 2d 911 (1996).

When determining if reasonable suspicion exists for a *Terry* stop, the court looks to whether "the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot,' even if the officer lacks probable cause." *United States v. Griffin*, 696 F.3d 1354, 1358 (11th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his

---

[2] A traffic stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979).

experience." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. Courts look to the totality of the circumstances to ascertain "whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). Yet, in evaluating the totality of the circumstances, the court may not consider each fact in isolation. *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002). Rather, "[b]ased upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

Again, in the case at hand, the observations of the off-duty officer that Amey was speeding and likely under the influence provide sufficient reasonable suspicion (and indeed probable cause) to conduct a *Terry* stop. Speeding, driving under the influence and possession of marijuana are violations of Alabama law. *See* Ala. Code § 32-5A-171 (speeding); § 32-5A-191 (Driving Under the Influence); § 13A-12-212 (Unlawful Possession of a Controlled Substance). Once Amey opened the door and stepped out of the car, the police saw marijuana residue in plain view which provides ample basis to arrest Amey and to conduct a search incident to arrest of the backpack. *See Birchfield v. North Dakota*, --- U.S. ---, 136 S. Ct. 2160, 2175-76, 195 L. Ed. 2d 560 (2016) (discussing *United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) and its holding that the search incident to arrest of the person and the area within the control of the arrestee). Amey had the backpack in his hands thus the officers had an additional safety reason to search inside the backpack.

Finally, Amey contends the police unconstitutionally prolonged the traffic stop in violation of the holding in *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). The Eleventh Circuit recently reiterated that the proper standing emanating from

*Rodriguez* is that "a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." *United States v. Campbell*, 26 F.4th 860,[3] 2022 U.S. App. LEXIS 4317, *44 (11th Cir. Feb. 16, 2022). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614 (citation omitted); *see also United States v. Braddy*, 11 F.4th 1298, 1310 (11th Cir. 2021) (quoting *Rodriguez*). "That mission or purpose often includes checking the driver's license, attending to safety concerns, searching for outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance." *United States v. Burwell*, 763 F. App'x 840, 844 (11th Cir. 2019) (citation omitted). "In other words, to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Campbell*, 26 F.4th at ---; 2022 U.S. App. LEXIS 4317, at *44.

      Here the officers did not unlawfully prolong the stop – in fact they did not prolong the stop at all as Hudson saw the marijuana residue at the outset of the encounter. The body-cam video clearly establishes that mere moments after Amey got out of the vehicle Hudson identified the marijuana residue. The remainder of the encounter related to the investigation of whether Amey possessed additional contraband and was no longer than necessary to make that determination.

---

[3] On the date of this order, Westlaw has listed this publication cite, but does not yet include specific page numbers within the opinion. Lexis-Nexis has not yet listed the published citation, but has the Lexis cite with page numbers. Therefore, the Court lists both citations for each *Campbell* reference.

###    III.    CONCLUSION

For the reasons articulated in this Memorandum Opinion, the *Motion to Suppress Illegally Seized Evidence* (Doc. 24) is **DENIED**.

**DONE** and **ORDERED** this 18th day of March, 2022.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE